# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TRINITY F. SIMPSON** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.:** |
| ) | **1:23-cv-441** |
| **V.** ) | |
| ) | **JURY DEMAND** |
| **CSL PLASMA,** ) | |
| ) | |
| **Defendant.** ) | |

# COMPLAINT

## I.   INTRODUCTION

1.   This is an action alleging gender discrimination in violation of Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42 U.S C. §2000e et. seq., as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), brought by Trinity Simpson.  Plaintiff is a female.  Plaintiff alleges that Defendant discriminated against her based on her pregnancy by terminating her employment. In this action, Plaintiff also alleges violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 et. seq.  Plaintiff was an eligible employee with a serious health condition.  Defendant interfered with Plaintiff's rights under the FMLA by, inter alia, terminating her before she could use FMLA leave and retaliated against Plaintiff because of her request to utilize FMLA leave in the future.  Plaintiff seeks

1

injunctive relief, equitable relief, reinstatement, lost wages and benefits, liquidated damages, compensatory damages, and reasonable attorney fees and costs.

## II.   JURISDICTION

2.   This Court has jurisdiction in accordance with 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

3.   Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Civil Rights Act.  Plaintiff timely filed her charge of discrimination within 180 days of the occurrence of the last discriminatory act and the Equal Employment Opportunity Commission investigated.  The EEOC issued a Right to Sue Notice on September 14, 2023.  The FMLA does not require the exhaustion of administrative remedies.  Plaintiff timely filed this lawsuit. 29 C.F.R. 825.400(b).

## III.   PARTIES

4.   Plaintiff, Trinity Simpson, is an individual over the age of 19 years and is a resident of Citronelle, Mobile County, Alabama.  Plaintiff is a female and, during the relevant time period, she was pregnant. Plaintiff was also an employee eligible for benefits under the FMLA, for all times relevant to this action.

5.   Defendant CSL Plasma, Inc., (hereinafter "CSL") is an "employer" as defined under Title VII and the FMLA and is subject to compliance with both statutes. Defendant operates a facility in Mobile, Mobile County, Alabama.

## IV. FACTUAL ALLEGATIONS

6. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if fully set out in specific detail herein below.

7. Plaintiff Trinity Simpson began working for Defendant CSL Plasma, Inc. at its facility in Mobile, Alabama in February of 2021.

8. Simpson was hired as a phlebotomist and was responsible for collecting plasma from donors.

9. Simpson performed her job well.

10. In the Spring of 2022, Simpson was promoted to the position of Area Lead.

11. As Area Lead, in addition to continuing to work directly with donors, Simpson was responsible for keeping the donor floor appropriately stocked, arranging the lunch schedule for phlebotomists, and communicating new policies and information from management to the phlebotomists.

12. Simpson performed well in her new position.

13. Simpson's immediate supervisor was Britta Jones, the Assistant Manager over the Donor Floor.

14. On or about February 12, 2023, Simpson had a doctor's appointment and found out that she was pregnant.

15. Within a day or two of the appointment, Simpson let Jones know about her pregnancy.

16. Simpson shared her October 2023 due date with Jones and said she wanted to know about how maternity leave worked.

17. Simpson let Jones know that she wanted to get all the appropriate paperwork filled out in advance, if necessary, so that it would be taken care of.

18. Jones said benefits would handle it all at a later time.

19. Simpson also let Jones know that, as a result of her pregnancy, her doctor had advised her to stop some of her medications and take some additional precautions, like avoiding lifting really heavy things and taking a break to sit if she felt light-headed.

20. Jones said ok.

21. During the next week, Simpson would sit down while completing certain job duties. This brief break did not interrupt work flow, nor did it cause Simpson to be unable to complete her job duties.

22. Simpson saw that Jones observed her sitting occasionally.

23. The week after, Jones made an announcement that no one was allowed to sit while on the donor floor.

24. Shortly thereafter, Jones asked Simpson to move heavy boxes up front, but Simpson said that she could not complete that task due to her pregnancy.

25. Simpson let Jones know she was working on other necessary job duties and other staff members were available to do the lifting, but Jones' facial expressions indicated to Simpson that Jones' was annoyed.

26. Not long after that, David Panetta, the Center Supervisor, asked Simpson to work in inventory, which required lifting heavy boxes of frozen plasma.

27. Simpson reminded Pannetta about her pregnancy and let him know that she could not lift the frozen plasma. Pannetta indicated Simpson should go and work in the lab if she couldn't do inventory.

28. Simpson went to the lab and completed tasks.

29. Later, Jones came to Simpson questioning why she wasn't doing inventory (lifting the frozen plasma).

30. Simpson reminded Jones about her pregnancy restrictions and said that Pannetta had given her the 'ok' to work on different (but still necessary) tasks in the lab.

31. Jones looked visibly upset and walked off.

32. On or about March 16, 2023, Simpson went out to her car for her lunch break. At that time, she was on the phone with her co-worker, Gere Roehrig.

33. While Simpson was in the parking lot, another employee (Artelia) came out of the building and into the parking lot near Simpson's car. Artelia was loudly

talking on her phone and Simpson could clearly hear her making threats to Roehrig and Roehrig's family.

34. Simpson was concerned for Roehrig's safety and reported what she heard to Pannetta.

35. Roehrig had worked earlier in the day, but was not physically present at the facility at that time. However, because she was on the phone with Simpson, she did hear Artelia's threats.

36. Roehrig contacted the police about Artelia's threats.

37. Roehrig also let Jones know about the incident and said that she (Roehrig) had recorded Artelia's conversation.

38. Two days later, Jones asked Simpson and Roehrig to write statements about the incident, which they did.

39. Panetta left CSL in late March 2023.

40. During a meeting with Jones and the three Lead employees for the Donor Floor (Simpson, J'Vaughn Briscoe, and Gere Roehrig), Jones discussed a recently hired receptionist.

41. The receptionist was then visibly pregnant.

42. Jones said she wouldn't have hired the receptionist if she knew she were pregnant.

43. Jones mentioned that the new receptionist had hidden her pregnancy well, which Simpson understood to mean hidden during the interview for the job.

44. At a different time, Simpson's co-worker heard Jones say that Simpson's pregnancy was not good for the center.

45. On or about April 14, 2023, Simpson came in to work as usual on the night shift.

46. After working for about eight hours, Jones came to the donor floor and asked Simpson to come to the office for a minute.

47. Simpson finished with her patient and then went to Jones' office.

48. Ryan, head of the Quality department, was also in the office. Ryan did not say anything during the meeting.

49. Jones said that Simpson was terminated.

50. Jones said that Simpson violated Alabama law and CSL Policy by recording Artelia's conversation in the parking lot.

51. Jones asked Simpson to gather her things and leave. Simpson complied.

52. Roehrig was not pregnant at any time relevant to this action.

53. Although Roehrig specifically told Jones that she (Roehrig) had recorded Artelia's conversation, Roehrig was not terminated.

54. Roehrig received no discipline from Jones as a result of the incident with Artelia.

55. In terminating Simpson's employment, Defendant intentionally, willfully, and maliciously discriminated against Simpson on the basis of her gender and pregnancy, in complete disregard for her federally protected rights.

56. In terminating Simpson's employment, Defendant intentionally, willfully, and maliciously interfered with Simpson's federally protected rights under the FMLA by preventing her from taking leave in the future.

57. Simpson further asserts that her termination was in retaliation for exercising her rights to request information about and apply for approval of FMLA leave for the end of her pregnancy.

58. As a result of Defendant's actions and inactions, Simpson has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Simpson has suffered injury including pain, humiliation, emotional distress, mental anguish and suffering, and loss of enjoyment of life.

## V. CAUSES OF ACTION

### A. Title VII- Disparate Treatment

59. Plaintiff re-alleges and incorporates by reference the foregoing paragraphs above with the same force and effect as if fully set out in specific detail herein below.

60. Plaintiff Trinity Simpson is a female.

61. Defendant is an employer in accordance with 42 U.S.C. 2000e(b).

62. In February of 2023, Simpson informed her supervisor that she was pregnant.

63. In terminating the Plaintiff, Defendant has maliciously, intentionally, and with reckless disregard discriminated against Plaintiff due to her gender/pregnancy.

64. Defendant has no legitimate, non-discriminatory reason for its conduct.

65. As a proximate result, Plaintiff has suffered extreme harm including, but not limited to, loss of employment, denial of wages, compensation, and other benefits and conditions of employment. Plaintiff has also suffered injury, including pain, humiliation, mental anguish and suffering.

### B. The Family Medical Leave Act –Interference and Retaliation

66. Plaintiff realleges and incorporates by reference paragraphs 1-58 above with the same force and effect as if fully set out in specific detail herein below.

67. Plaintiff Trinity Simpson was an employee of Defendant eligible to take leave under the FMLA. 29 C.F.R. 825.110; 29 U.S.C. 2612.

68. Defendant CSL Plasma is an employer in accordance with 29 U.S.C. 2611 and 29 C.F.R. 825.104. As a result, Defendant is subject to compliance with the FMLA.

69. Plaintiff was entitled to take leave for her pregnancy. 29 C.F.R. 825.120.

70. Plaintiff was entitled to benefits under the FMLA, but was effectively denied FMLA benefits in violation of the FMLA.

71. Defendant unlawfully interfered with Plaintiff's rights to benefits under the FMLA by, inter alia, terminating Plaintiff before she could use FMLA leave. 29 U.S.C. 2615; 29 C.F.R. 825.100(a); 29 C.F.R. 825.202; 29 C.F.R. 825.205(a)(1).

72. Defendant failed to provide Plaintiff with appropriate notice of her FMLA rights.  29 C.F.R. 825.300(b) and (c).

73. Plaintiff engaged in statutorily protected activity by requesting information about applying for FMLA leave and expressing her intent to utilize FMLA leave for her pregnancy.

74. Subsequent to this, Defendant unlawfully retaliated against Plaintiff by terminating her employment. Defendant's actions were causally connected to Plaintiff's protected activity.

75. Defendant's actions were willful and unreasonable.

76. As a result of Defendant's actions and inactions, Plaintiff has suffered extreme harm, including, but not limited to, loss of employment opportunities, denial of wages, compensation, and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life.

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.	Issue a declaratory judgment that the employment practices, policies, procedures, conditions, and customs that led to the discrimination by Defendant violate Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, 42 U.S C. §2000e et. seq., as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), and the Family Medical Leave Act, 29 U.S.C. 2611, et. seq.

2.	Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request, from continuing to violate the Title VII and the FMLA.

3.	Enter an Order requiring the Defendant to make Plaintiff whole by awarding Plaintiff reinstatement, back-pay (plus interest), lost benefits, and compensatory, punitive, liquidated, and nominal damages.

4.	Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses incurred by this litigation.

5.	Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief is her only means of securing adequate relief.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,


*/s/ Rachel L. McGinley*
Rachel L. McGinley
Alabama State Bar No.: 1892-A64M
**WIGGINS, CHILDS, PANTAZIS, FISHER, GOLDFARB**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
Email: rmcginley@wigginschilds.com

Counsel for Plaintiff



**DEFENDANT'S ADDRESS:**
CSL Plasma, Inc.
c/o CT Corporation System, Registered Agent
2 North Jackson Street, Ste. 605
Montgomery, Alabama 36104

*/s/ Rachel L. McGinley*
OF COUNSEL